IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 06-cv-01589-LTB

MIRIAM S. LIND,

       Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

       Defendant.
_____

ORDER
_____

       Plaintiff, Miriam S. Lind, appeals the final decision of Jo Anne Barnhart, Commissioner of Social Security, denying her application for Social Security Disability benefits. Following a February 8, 2006, hearing, Administrative Law Judge ("ALJ") Peggy Sue Ball issued an unfavorable decision on March 31, 2006. The Appeals Council determined there was no basis for changing the ALJ's decision, thus making it the Commissioner's final decision. Plaintiff has exhausted her administrative remedies and this case is ripe for judicial review. Jurisdiction is proper under 42 U.S.C. § 405(g). Oral arguments would not materially assist the determination of this appeal. After consideration of the parties' briefs, as well as the administrative record, and for the reasons set forth below, I REVERSE and REMAND.

### I. BACKGROUND

       Plaintiff was born on August 14, 1960, and was forty-five years of age at the time of the hearing. She has four years or more of college education. [Administrative Record "AR" 66].

Her past work history includes employment as an occupational therapist, waitress, and nanny. [AR 73]. Plaintiff claims she is disabled because of a back and leg injury, Meniere's disease (a disease of the inner ear that can affect hearing and balance), and mental health conditions including depression, bipolar disorder, and anxiety and panic attacks.

Plaintiff's alleged onset date is September 26, 2002, the last date she worked as an occupational therapist. [AR 16]. Plaintiff began working sporadically again in May 2005. She worked twelve to fifteen hours per week as a convenience store clerk for two months from May 2005 to July 2005, and fifteen to thirty hours per week as a hotel front desk clerk for one month in September 2005. [AR 406–11]. Plaintiff began working twelve to twenty hours per week as a waitress in September 2005 and thirty-two to forty hours per week as of two or three weeks before her hearing. [AR 406–11].

## A.  Plaintiff's Medical History

Although Plaintiff's disability application alleges both physical and mental impairments, this appeal raises no issues related to the ALJ's findings regarding physical impairment and I do not address them here.

Plaintiff reports a history of mental health problems beginning in 1999. [AR 67]. Plaintiff began seeing Dr. Vadnal for these issues in May 2002. [AR 62]. Dr. Vadnal noted mild depression, moderate to high anxiety, and a Global Assessment of Functioning ("GAF") of 45. [AR 143–44]. Dr. Vadnal continued treating Plaintiff through January 2004. Dr. Vadnal noted some improvement during the course of treatment, with a typical GAF of 55 or 60. [AR 280–83]. However, he also noted continued treatment-resistant depression, episodic suicidal ideation, and severe daily panic attacks. [AR 280–83].

Dr. Vadnal completed a functional assessment in September 2003 stating Plaintiff's medical conditions would interfere with employment and noting Plaintiff had moderate restrictions in activities of daily living, marked difficulty maintaining social functioning, and frequent difficulty of concentration, persistence, or pace resulting in a failure to complete tasks in a timely manner. [AR 258–63].  Dr. Vadnal expected Plaintiff's mental impairment would impair her ability to complete tasks on a timely basis at least once per day; cause her to be absent from and/or late to work more than once per week; require her to be specially supervised; distract her from her work three or four times per day if she worked in the proximity of others; impair her ability to interact with the public two or three times per week; and otherwise restrict her ability to work with others every day.  [AR 264–66].  Dr. Vadnal also expected Plaintiff to experience two or three episodes of decompensation per year, lasting one to two months each.  [AR 267].

In February 2004, Plaintiff presented to Parkview Medical Center with thoughts of suicide.  [AR 388].  She was diagnosed with depression, panic disorder, bipolar disorder, and assessed a GAF of 50 with serious symptoms.  [AR 390].  She was assessed a GAF of 40 at discharge six days later.  [AR 302].  Following her six-day hospitalization, Plaintiff began treatment with Dr. Nizami.  Plaintiff reported feeling better and was assessed a GAF of 55–60 in early March 2004.  [AR 333–34].  In June 2004, at Dr. Nizami's suggestion, Plaintiff presented to Spanish Peaks Mental Health with thoughts and threats of suicide and was briefly admitted as an inpatient.  [AR 291–99].  She received occasional treatment at Spanish Peaks and was assessed a GAF of 65 in November 2004.  [AR 291–92].  Dr. Nizami continued to treat Plaintiff through late 2005, noting some improvement, but continued anxiety attacks, depression, and occasional hospital visits.  [AR 312–44].

Dr. Nizami completed a mental residual functional capacity ("RFC") evaluation in February 2006. [AR 347–48]. Dr. Nizami noted marked limitation in Plaintiff's ability to understand and remember detailed instructions; carry out short and simple instructions; sustain an ordinary work routine without special supervision; work in coordination with others without being distracted by them; make simple work decisions; interact appropriately with the general public; be aware of hazards and take appropriate precautions; and travel in unfamiliar places or use public transportation. [AR 347–48]. He noted extreme limitation in Plaintiff's ability to maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance and be punctual; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others. [AR 347–48]. Dr. Nizami stated these limitations had been present at this level since he began treatment in March 2004. [AR 348].

### B.  Disability Hearing

At Plaintiff's hearing on February 8, 2006, the ALJ questioned Plaintiff about her prior mental hospitalizations and her current conditions. [AR 412–15]. Plaintiff testified regarding her anxiety, depression, forgetfulness, and concentration problems, and noted two recent car accidents where she lost concentration and drove off the road. [AR 412–15]. Plaintiff described uncontrollable "crying jags" that occurred two to three times a week because of her depression, and near-daily panic attacks. [AR 416]. Plaintiff stated her employer made special accommodations for her. [AR 417].

The ALJ then questioned a vocational expert ("VE") regarding Plaintiff's past relevant work. [AR 420–24]. The ALJ first asked whether a hypothetical person with a work history

similar to Plaintiff's—but who is limited to light work which does not require more than occasional bending, balancing, stooping, or kneeling, and which allows for changing position and stretching every 45 minutes to an hour—could perform any past relevant work. [AR 423]. The VE replied that the hypothetical person could perform the front desk clerk job. [AR 423]. The ALJ then added an additional limitation of work that had a specific vocational preparation level of three or less, not requiring understanding, remembering, or carrying out complex or detailed instructions. [AR 423]. The VE replied that the hypothetical person could not perform any relevant past work. [AR 423]. The VE stated there were several other jobs that a hypothetical person with those limitations could perform, including registration clerk, check casher, and telephone quotation clerk. [AR 423–24]. The VE stated a hypothetical person with the limitations described by Plaintiff would be unable to perform any of those jobs because the sitting, standing, and walking limitations would preclude those jobs, and the mental limitations would take the hypothetical person off task and affect concentration and focus. [AR 424].

### C.  ALJ Ruling

In her ruling, the ALJ applied the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520. Applying the first step, the ALJ determined Plaintiff had not performed substantial gainful activity since her onset date of September 26, 2002. [AR 16]. Applying the second step, the ALJ determined Plaintiff had severe impairments, including low back strain with radiculopathy, depressive disorder and anxiety-related disorder. [AR 16]. Applying the third step, the ALJ determined Plaintiff did not "meet or equal the criteria of any listed impairment, including the musculoskeletal impairments commencing at 1.00, the hearing listing at 2.08, or any neurological listing beginning at 11.00 of Appendix 1 of the Regulations." [AR 16]. Applying

the fourth step, the ALJ determined Plaintiff was unable to perform any past relevant work. [AR 19]. Applying the fifth step, the ALJ determined Plaintiff was capable of performing other work. [AR 20]. The ALJ concluded that "while the claimant has severe impairments that preclude her from performing her past relevant work, she retains the residual functional capacity to perform other work existing in significant numbers in the national economy. She therefore has not been under a disability at any time through the date of this decision [March 31, 2006]." [AR 16].

When considering Plaintiff's mental impairments, the ALJ found that Plaintiff's employment as a waitress on the date of her hearing was "unsupportive of the claimant's allegations of psychological symptoms which preclude her from working." [AR 18]. The ALJ found Plaintiff's mental impairments to be situational and determined that the mental RFC assessments completed by Drs. Vadnal and Nizami were "unsupported by their treatment notes, the degree of treatment required by the claimant, and the claimant's own current level of functioning." [AR 19]. The ALJ concluded that finding Plaintiff able to work jobs with a specific vocational preparation level of three or less was consistent with the GAF scores provided by Plaintiff's treating psychiatrists.

## II. STANDARD OF REVIEW

My review in a Social Security appeal is limited to whether the final decision is supported by substantial evidence and the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Although I do not reweigh the evidence or try the issues *de novo*, I must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met. *Id*. at 1262. Evidence is substantial if it amounts to "more than a scintilla, but less than a preponderance; it is

such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). Evidence is not substantial if it is overwhelmed by other evidence in the record, or constitutes a mere conclusion. *Grogan*, 399 F.3d at 1261–62. If the ALJ's decision is not supported by substantial evidence, or if the ALJ failed to provide a sufficiently clear basis from which I may determine the appropriate legal standards were applied, I may reverse. *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994).

### III.  DISCUSSION

Plaintiff raises five issues on appeal: (1) The ALJ failed to properly assess the treating psychiatrists' opinions of Plaintiff's mental impairments; (2) The ALJ failed to explain the basis of her mental RFC finding; (3) The ALJ failed to contact the treating psychiatrists to clarify the apparent conflict between their RFC opinions and GAF scores; (4) The ALJ failed to properly assess whether Plaintiff's mental impairment met an Appendix 1 listing; and (5) The ALJ failed to consider whether Plaintiff was entitled to a closed period of disability.

A.  The ALJ failed to properly assess the treating psychiatrists' opinions of Plaintiff's mental impairments

On appeal, Plaintiff first contends the ALJ failed to apply correct legal standards in evaluating the opinions of Plaintiff's treating psychiatrists, Drs. Vadnal and Nizami. She contends the ALJ failed to properly weigh their opinions and to provide specific, legitimate reasons for rejecting them. I agree.

1. The weight accorded a treating physician's opinion is determined by a two step inquiry

The ALJ must consider every medical opinion received and determine the weight each opinion should be given. 20 C.F.R. § 404.1527(d). The weight given a treating physician's

opinion is determined using a two step inquiry. First, the ALJ must determine whether to give the treating physician's opinion controlling weight. Second, if the ALJ determines the treating physician's opinion is not entitled to controlling weight, the ALJ must then determine how much weight to give the opinion by applying the six factors provided in 20 C.F.R. §§ 404.1527 and 416.927. Unless good cause is shown to the contrary, a treating physician's opinion should be given substantial weight. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

The first step of the treating-physician inquiry includes a sequential analysis of two factors. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); 20 C.F.R. § 404.1527(d)(2). Applying the first factor, the ALJ must determine if the treating physician's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. *Watkins*, 350 F.3d at 1300. If the answer to this question is "yes," the ALJ applies the second factor and must determine if the opinion is consistent with other substantial evidence on the record. *Id.* If the answer to this question is also "yes," the opinion "must be given controlling weight; i.e., it must be adopted." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *1 (S.S.A. 1996) [hereinafter "SSR 96-2p"].

If the answer to either question is "no," the ALJ must proceed to the second step. A treating physician's medical opinion is entitled to deference and must be weighed using the six factors provided in 20 C.F.R. § 404.1527 and 416.927. *Watkins*, *supra*, 350 F.3d at 1300. These factors are: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether

or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Id.* at 1301 (citing *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001)). Social Security Agency rules make clear that an ALJ must articulate her reasoning with specific and legitimate findings at each step of the inquiry so that a subsequent reviewing court can determine the weight accorded to each opinion and the reasons for that weight. *Id.* (citing SSR 96-2p, *supra*, at *5). A reviewing court will not presume the ALJ applied the correct legal standards absent this analysis. *Id.*

### 2.  The ALJ did not properly apply the two step inquiry

Three psychiatrists provided mental RFC assessments of Plaintiff: Drs. Vadnal, Nizami, and Ganard. Drs. Vadnal and Nizami are Plaintiff's treating physicians. Dr. Ganard, a non-examining state psychological consultant neither examined nor treated Plaintiff. The ALJ found Dr. Ganard's assessment to be discordant with the medical record and properly accorded it no significant weight. [AR 19].

The ALJ's discussion of the weight given the opinions of Plaintiff's two treating psychiatrists reads, in its entirety: "Although [Plaintiff's] psychiatrists, Robert Vadnal, M.D., and Musharraf Nizami, M.D., completed assessments in which they identified moderate to marked functional limitations through the area of psychological functioning, these opinions are unsupported by their treatment notes, the degree of treatment required by the claimant, and the claimant's own current level of functioning, which includes an ability to hold down a full time job." [AR 19]. (Drs. Vadnal and Nizami also identified some *extreme* psychological limitations that were not discussed by the ALJ. While consideration of this error is not necessary to my

decision in this case, it is noted for correction on remand. *See Washington*, *supra*, 37 F.3d at 1440.)

The ALJ's application of the first step of the treating-physician inquiry is recondite at best. The ALJ did not articulate, nor even examine, whether Drs. Vadnal and Nizami's opinions were well-supported by medically acceptable clinical and laboratory diagnostic techniques. Neither did she adequately articulate whether Drs. Vadnal and Nizami's opinions were consistent with other substantial evidence on the record.

The ALJ appears to find inconsistency with the treatment notes, the degree of treatment required by the claimant, and the claimant's own current level of functioning. As to the first two inconsistencies—the treatment notes and the degree of treatment required by the claimant—the ALJ could not have properly determined inconsistency without first undertaking an inquiry into the clinical signs, laboratory findings, and medical bases used by the treating physicians. *See* SSR 96-2p, *supra*, at *3. "Because the evidence is in medical, not lay, terms and information about these issues may be implied rather than stated," the ALJ may not substitute her own speculation or lay opinion, but must undertake a medically-based inquiry into "what the clinical signs and laboratory findings signify." *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004); SSR 96-2p, at *3. As to the third inconsistency—the claimant's current level of functioning—the ALJ's finding that Plaintiff's employment at the time of hearing was inconsistent with Drs. Vadnal and Nizami's opinions was also improper. *See Shepherd v. Apfel*, 184 F.3d 1196, 1202–02 (10th Cir. 1999). At the time of Plaintiff's hearing, she had been working "thirty-two to forty hours per week" for "just the last two to three weeks." [AR 407, 411]. (The ALJ's erroneous finding that Plaintiff "was admittedly performing waitressing work upwards of 40 hours a week" at the time of

hearing is completely without support in the record, and is noted for remand.) Dr. Vadnal treated Plaintiff from May 2002 through January 2004. Dr. Nizami treated Plaintiff from March 2004 through her hearing in February 2006. The fact that Plaintiff recently began working full time by the date of her hearing is not inconsistent with Drs. Vadnal and Nizami's diagnoses of Plaintiff's disability prior to that date. *Shepherd*, 184 F.3d at 1201–02. Without a more detailed factual record of Plaintiff's disability between September 2002 and February 2006, the weight accorded the treating psychiatrists' diagnoses cannot properly be determined by Plaintiff's ability to work on the date of her hearing.

Even if the ALJ's fleeting consideration of Plaintiffs' treating psychiatrists' opinions could be considered sufficient to satisfy the first step of the treating-physician inquiry, she failed to consider the second step entirely. If the ALJ chooses on remand to reject the evidence and opinions of the Plaintiff's treating physicians, she must demonstrate good cause for her rejection, setting forth specific and legitimate reasons for doing so. *Washington*, *supra*, 37 F.3d at 1440; *Byron*, *supra*, 742 F.2d at 1235. Her opinion and decision must be clearly stated so that any subsequent reviewers can ascertain the weight she gave to each treating source's medical opinion and the reasons for that weight. *Watkins*, *supra*, 350 F.3d at 1300.

The reasoning above also applies to the second and fifth issues raised by Plaintiff on appeal. In regard to the third issue raised by Plaintiff, if the ALJ determines the medical record is ambiguous or conflicting or otherwise inadequate to determine Plaintiff's disability—keeping in mind that an ALJ "is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability"—the ALJ should contact Drs. Vadnel and Nizami for additional information, as required by 20 C.F.R. § 404.1512. *Robinson v. Barnhart*,

366 F.3d 1078, 1083, 1084 (10th Cir. 2004).

    B.  <u>The ALJ failed to properly assess whether Plaintiff's mental impairment met a listing</u>

20 C.F.R. § 404.1520(a)(4)(iii) requires the ALJ to determine if Plaintiff has an impairment that meets or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1.  The ALJ found the Plaintiff had two "severe" mental impairments: depressive disorder and anxiety-related disorder.  [AR 16].  Nonetheless, the ALJ did not consider whether Plaintiff met listing 12.04 (depressive disorders) or 12.06 (anxiety-related disorders).  On remand, the ALJ should determine whether Plaintiff's "severe" depressive disorder and anxiety-related disorder meet the appropriate listings.  *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

### IV.  CONCLUSION

Accordingly, I ORDER that the March 31, 2006 administrative decision is REVERSED and REMANDED to the Commissioner with directions to remand to the Administrative Law Judge for proceedings consistent with this opinion.


Dated: September   4  , 2007 in Denver, Colorado.


                                                BY THE COURT:

                                                  s/Lewis T. Babcock  
                                                LEWIS T. BABCOCK, JUDGE